UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

TIMOTHY K. CHANDLER,

        Plaintiff,

v.                                                          Case No.  5:07-cv-229-Oc-10GRJ

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

## <u>ORDER</u>

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits. (Doc. 1.)  The Commissioner has answered (Doc. 4) and both parties have filed briefs outlining their respective positions.  (Docs. 11 & 18.)  For the reasons discussed below, the Court finds that the Commissioner's decision is due to be **REVERSED.**

## I.  <u>PROCEDURAL HISTORY</u>

On July 17, 2004, Plaintiff filed an application for disability insurance benefits claiming a disability onset date of March 22, 2003. (R. 83-86.)  The application was denied initially (R. 39-40), and upon reconsideration. (R. 35-6.)  Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ").  (R. 34.)  After conducting a hearing on October 11, 2006 (R. 215-40) the ALJ issued a decision unfavorable to Plaintiff on November 7, 2006.  (R. 11-20.)   Plaintiff timely filed a request for review with the Appeals Council.  (R. 10.)  The Appeals Council denied Plaintiff's

request for review.  (R. 5-7.)  On June 5, 2007, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] <u>See</u> 42 U.S.C. § 405(g).

[2] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); <u>accord,</u> <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] <u>Foote</u>, 67 F.3d at 1560; *accord,* <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

2

reasoning to determine that the Commissioner properly applied the law.[5]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

    The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her

---

    [5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

    [6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

    [7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

    [8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

    [9] 20 C.F.R. § 404.1520(b).

    [10] 20 C.F.R. § 404.1520(c).

    [11] 20 C.F.R. § 404.1520(d).

    [12] 20 C.F.R. § 404.1520(e).

RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

---

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[18] Walker at 1003.

4

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. <u>SUMMARY OF THE RECORD EVIDENCE</u>

Plaintiff was forty-five years old on the alleged disability onset date.  (R. 219.) Plaintiff has an associates degree in fine arts (R. 220) and past work experience as a road construction worker and truck driver. (R. 95.)  Plaintiff is insured for benefits through June 30, 2004, and thus, he is required to establish that his disability began before that date. (R. 59.)

On March 22, 2003, Plaintiff was admitted to Orlando Regional Medical Center following a motorcycle accident, without a helmet. (R. 142-65.)  Plaintiff sustained bilateral subdural hematoma, bilateral frontal hemorrhagic contusion, right parietal subarachnoid hemorrhage, left orbital roof fracture with bone projecting near the optic nerve, left lamina papyracea fracture, nasal bone fracture, and sphenoid bone fracture. (R. 144, 162-63.)  Plaintiff was on a ventilator with a tracheotomy and after he stabilized he had a PEG feeding tube in place.  (R. 193.)  Plaintiff had a number of surgeries while

---

[19] <u>Wolfe</u> at 1077-78.

[20] <u>See</u> <u>id</u>.

[21] <u>See</u> <u>Doughty</u> at 1278 n.2.

in the hospital.  (R. 142-65.)  Plaintiff reported being in the rehabilitation center for nearly a month and a half.  (*Id.*)  Plaintiff had eye surgery in July 2004 to correct vision problems resulting from the motorcycle accident.  (R. 166-73.)  From June 2003 through June 2004, Plaintiff was treated at Magnolia Family Practice & Family Care.  (R. 175-85.)

On October 18, 2004, Plaintiff was evaluated by Ken Ng., M.D., on referral from The Office of Disability Determination.  (R. 193-94.)  Plaintiff's primary complaints were intermittent headaches, impaired coordination and pain in the right lower extremity. (R. 193.)  Plaintiff also reported feelings of stress and a lack of energy.  (*Id.*)  Dr. Ng noted that Plaintiff had returned to work earlier that year but was not able to maintain his employment. (*Id.*)  On neurological exam, Dr. Ng found normal mental function with normal speech and no comprehension difficulties.  (*Id.*)  Dr. Ng. found that eye movement was full although there was some lag in the left eye; with eyeglasses Plaintiff's visual acuity was 20/30 in both eyes.   (*Id.*)  Dr. Ng. further reported no other cranial nerve deficits and found that Plaintiff's motor and sensory function was intact and his handgrip strength and fine manipulations were both normal.  (Id.)  Plaintiff's gait was slightly wide-based, slightly unsteady but there was no evidence of ataxia.  (*Id.*)  Dr. Ng's impression was that Plaintiff had sustained "quite a severe head injury with skull fractures, facial fractures and cerebral contusion in March 2003" but that he "recovered from it relatively well although he has some mild residuals with intermittent headache, lack of energy and pain." (*Id.*)

On May 19, 2006, Rodney A. Poetter, Ph.D. performed a psychological evaluation of Plaintiff.  (R. 205-14.)  Plaintiff reported that he cannot work because he

needs additional surgery on his left eye and his memory has been poor.  (R. 206.)  He

further stated that he is slow to respond to commands and has difficulty concentrating

and thinking, with his thought processes noticeably slowed.  (*Id.*)  Plaintiff advised that

he has occasional headaches but usually does not take any pain medication for them.

(Id.)  Dr. Poetter observed that Plaintiff's left eye "remains half closed" and that Plaintiff

reported he can see out of both eyes "when he holds his left eyelid open." (Id.)   Dr.

Poetter noted that Plaintiff has an obvious deformity in the left frontal area" and that his

"emotional expression was rather flat." (Id.)  Dr. Poetter further noted that Plaintiff could

walk independently without signs of balance or coordination difficulty and that he was

able to express himself clearly and fluently, his responses controlled and appropriate to

questions asked and topics under discussion.  (Id.)

On examination, Dr. Poetter found severe impairments in reading pronunciation

skills and expressive writing skills and found that Plaintiff's cognitive arithmetic

computational skills were limited to simple addition and multiplication.  (R. 208.)

Plaintiff's verbal reasoning skills tested at the 16th percentile for his peer group. (Id.)  Dr.

Poetter found no indication of deficits in either immediate or short-term auditory memory

or any overall visual or auditory attentional deficits.  (Id.)  However, Dr. Poetter noted

that Plaintiff had "extremely slow performance time, or impaired reaction time."   (Id.)

Dr. Poetter found that objective personality testing was valid and suggests a significant

psychological contribution to his medical symptoms. (Id.)  Dr. Poetter noted that

Plaintiff's mental status examination was inconsistent with any major affective or

thought disturbance. (Id.)  Dr. Poetter found Plaintiff to be a "credible witness, his profile

suggesting a defensive test-taking attitude, clearly inconsistent with any malingering or symptom exaggeration."  (Id.) Dr. Poetter's diagnostic impression was:

| | | |
|---|---|---|
| Axis I | 293.83 | Mood Disorder Due to Residual Effects of 3/22/03 MVA, With Depressive Features; |
| | 315.9 | Learning Disorder NOS; |
| Axis II | V71.09 | No Diagnosis on Axis II; |
| Axis III | | Residual Effects of 03/22/03 MVA; |
| Axis IV | | Problems Associated With Unemployment; |
| Axis V | | Current GAF = 55 |

(Id.)

In evaluating Plaintiff's functional limitations, Dr. Poetter opined that Plaintiff has moderate restriction of activities of daily living; slight difficulties in maintaining social functioning; and frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner.  (R. 214.)

There are two physical RFC assessments of record which were performed by non-examining state agency physicians on November 19, 2004 (R. 26-33) and January 26, 2005.  (R. 195-202.)   Based on the medical records, the state agency physicians found that Plaintiff could frequently lift and/or carry twenty five pounds and occasionally lift and/or carry fifty pounds; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; and push and pull without limitation.  (R. 27, 196.)  The physicians further found that Plaintiff should only occasionally balance or climb ladder/rope/scaffolds and should avoid exposure to hazards.  (R. 29-30, 197-99.)[22]

---

[22] The physician who performed the January 26, 2005 assessment (J. Vergo Attlesey, M.D.) opined that Plaintiff should only occasionally balance, whereas the physician who performed the earlier assessment found no such limitation (the physician's name is illegible).  Likewise, the earlier physician

(continued...)

At the October 11, 2006 hearing, Plaintiff testified that since his motorcycle accident he has had problems with his memory, slower speech, vision and has had difficulty standing on hard surfaces for any length of time.  (R. 226-31, 234.)  Plaintiff testified that he attempted to go back to work but that he was unable to do the work.  (R. 225-26.)  Plaintiff testified that he mows the grass on a riding mower with breaks, helps with the laundry and cooking.  (R. 237.)  Plaintiff testified that he can bathe and dress himself.  (*Id.*)        There are also a number of letters in the record from family members and friends describing how Plaintiff changed as a result of his motorcycle accident. (R. 126-32.)

The ALJ determined that claimant suffers from status post intracranial injury and an eye movement disorder.  (R. 16.)   While  the ALJ found that these impairments were severe and significantly limited Plaintiff's ability to perform work, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.   (Id.)

The ALJ found that Plaintiff was not entitled to disability insurance benefits because he retained the RFC to perform a full range of light work – lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk and sit for 6 hours in an 8-hour workday; frequent climbing of ramps and stairs, kneeling, crouching and crawling; and occasionally climbing ladders, ropes and scaffolds and balancing.  (R. 16-17.)  In

---

[22](...continued)
found Plaintiff should avoid even moderate exposure to hazards, while Dr. Attlesey found that Plaintiff should avoid concentrated exposure.

reaching this conclusion, the ALJ accorded little weight to Dr. Poetter's findings regarding functional limitations.  Specifically, the ALJ wrote, "[t]he claimant's testimony regarding his activities of daily living, and his ability to drive belie the degree of limitations described by Dr. Poetter" and Dr. Poetter "examined the claimant almost two years after the date last insured, and there is little evidence to support the degree of limitations prior to the date last insured." (R. 18.)

After finding that Plaintiff could not perform any past relevant work, the ALJ applied Rules 202.21 and 202.22 of the Medical-Vocational Guidelines (the "grids")[23] as a "framework" and found that Plaintiff was not disabled. (R. 19.)  The ALJ did not consult a vocational expert.

## IV.  DISCUSSION

### A.    The Onset Date Of Plaintiff's Mental Impairments

In his RFC analysis, the ALJ found that Plaintiff's mental impairments did not become disabling prior to June 30, 2004, the date of last insurability.  The ALJ accorded little weight to Dr. Poetter's opinion finding that "Dr. Poetter examined the claimant almost two years after the date last insured, and there is little evidence to support the degree of limitations prior to the date last insured." (R. 18.)[24]

As an initial matter, there is no question that Plaintiff's impairments arose from his motorcycle accident in March 2003.   Indeed, at step two, the ALJ identified two severe impairments – i.e., status post intracranial injury and an eye movement disorder – both of

---

[23] 20 CFR Pt. 404, Subpt. P. App.2 Rule 204.00.

[24] The ALJ also noted that the "claimant's testimony regarding his activities of daily living, and his ability to drive belie the degree of limitations described by Dr. Poetter." (R. 18.)

which were caused by the motorcycle accident and Dr. Poetter's diagnoses of "Mood

Disorder Due to Residual Effects of 3/22/03 MVA, With Depressive Features" and

"Residual Effects of 03/22/03 MVA" were obviously connected to the 2003 accident.  (R.

16, 208.)  Nevertheless, the ALJ found that Plaintiff's mental impairments did not

become disabling prior to June 30, 2004.

        In reaching this conclusion, the ALJ failed to mention (let alone discuss) the

numerous letters from Plaintiff's family and friends describing how Plaintiff changed as a

result of the accident.  (R. 126-32.) Pursuant to Social Security Ruling 83-20:

>   If reasonable inferences about the progression of the impairment cannot be
>   made on the basis of the evidence in [the] file and additional relevant medical
>   evidence is not available, it may be necessary to explore other sources of
>   documentation . . . Information may be obtained from family members,
>   friends, and former employers to ascertain why medical evidence is not
>   available for the pertinent period and to furnish additional evidence regarding
>   the course of the individual's condition. . . The impact of lay evidence on the
>   decision of onset will be limited to the degree it is not contrary to the medical
>   evidence of record.

       The letters from Plaintiff's wife, son, mother and friends note *inter alia* that

Plaintiff's speech had become very slow, that it now takes a long time for him "to put his

thoughts in order when he is in conversation", he is very easily distracted, he has a very

difficult time remembering things, he has very difficult time getting along with people and

that he has become a bit reclusive.  (Id.)  This testimony was consistent with Dr.

Poetter's opinion that Plaintiff has moderate restriction of activities of daily living; slight

difficulties in maintaining social functioning; and frequent deficiencies of concentration,

persistence or pace resulting in failure to complete tasks in a timely manner.  (R. 214.)

Accordingly, the ALJ erred by failing to even mention this lay testimony.[25]

Moreover, to the extent the record is inadequate or ambiguous as to whether

Plaintiff's mental impairments arose immediately after the accident or whether they were

slowly progressive impairments, the ALJ should have requested a medical opinion from

an advisor consistent with SSR 83-20.   SSR 83-20 states the policy and describes the

relevant evidence to be considered when establishing the onset date of disability.

"Factors relevant to the determination of disability onset include the individual's

allegation, the work history, and the medical evidence."[26] "However, the individual's

allegation, or the date of work stoppage, is significant in determining onset only if it is

consistent with the severity of the condition(s) shown by the medical evidence."[27]

In the case of slowly progressive impairments "it will be necessary to infer the

onset date from the medical and other evidence that describe the history and

symptomatology of the disease process."[28] In such a case, the ruling cautions that "the

administrative law judge (ALJ) should call on the services of a medical advisor when

onset must be inferred."[29]

---

[25] See Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990)(stating that on remand the ALJ should state the weight he accords to each item of impairment evidence, including evidence from friends and family).

[26] SSR 83-20.

[27] Id.

[28] Id.

[29] Id.

Although the Eleventh Circuit has not considered the issue of when an ALJ is required to obtain the advice of a medical expert, several other Circuits have interpreted the medical expert provision of SSR 83-20.[30] The Seventh and Sixth Circuits have applied a restrictive interpretation of SSR 83-20. In *Scheck*, a Seventh Circuit case, and in *Key*, a Sixth Circuit case, the view was adopted that SSR 83-20 has no application to cases in which the ALJ does not find the claimant to be disabled because in the absence of a finding of disability there is no reason to determine the date of onset.[31]

Other courts of appeal, however, have taken a less restrictive view of the text of SSR 83-20. The Eighth and the Third Circuits have both held - in cases where the claimant's impairment is slowly progressive and the ALJ is required to make a retroactive inference of disability prior to the date last insured - that the ALJ is required to call upon the services of a medical advisor, if the medical evidence during that time period is ambiguous or inadequate.[32]

---

[30] See, e.g., Walton v. Halter, 243 F.3d 703, 709 (3d Cir. 2001); Bailey v. Chater, 68 F.3d 75, 79 (4th Cir. 1995); Spellman v. Shalala, 1 F.3d 357, 363 (5th Cir. 1993); Key v. Callahan, 109 F.3d 270, 274 (6th Cir. 1997); Scheck v. Barnhart, 357 F.3d 697, 701 (7th Cir. 2004); Henderson ex rel Henderson v. Apfel, 179 F.3d 507, 513 (7th Cir. 1999); Grebenick v. Chater, 121 F.3d 1193, 1201 (8th Cir. 1997); Armstrong v. Commissioner, 160 F.3d 587, 590 (9th Cir. 1998); Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995).

[31] Scheck, 357 F.3d at 701 ("The ALJ did not find that Scheck was disabled, and therefore, there was no need to find an onset date.  In short, SSR 83-20 does not apply."); Key, 109 F.3d at 274 ("The Commissioner responds to this argument by asserting that SSR 83-20 is not applicable to this case, since this policy statement applies only when there has been a finding of disability and it is necessary to determine when the disability began.  We agree.").

[32] Walton, 243 F.3d at 709 (medical advisor required where "[a]dequate medical records for the most relevant period were not available;" the "impairment was a slowly progressive one and the alleged onset date was far in the past"); Grebenick, 121 F.3d at 1201 (whether a medical advisor is required turns on "whether the evidence is ambiguous regarding the possibility that the onset of [the claimant's] disability occurred before the expiration of her insured status" and whether "a retroactive inference is necessary"). This view was also followed by Judge Hodges in Aurednick v. Sullivan, 733 F. Supp. 1460 (M.D. Fla. 1990) in which the Court adopted a report and recommendation from a magistrate judge in which the magistrate judge noted that SSR ruling 83-20 was applicable to the ALJ's determination of whether the

(continued...)

Because the issue of onset is inextricably tied to the determination of disability in cases where the impairment is a slowly progressive condition that is not traumatic in origin, the Court concludes that the most logical interpretation of SSR 83-20 is to apply it to situations where the ALJ is called upon to make a retroactive inference regarding disability involving a slowly progressive impairment, and the medical evidence during the insured period is inadequate or ambiguous. Accordingly, in those situations the ALJ should be required to obtain the advice of a medical advisor to assist the ALJ in making the determination from the available medical evidence of whether the slowly progressive impairment constituted a disability prior to the date last insured.

Accordingly, on remand, the ALJ should reconsider whether Plaintiff's mental impairments became disabling prior to June 22, 2004 and in making that determination, the ALJ should consider the lay testimony and, if appropriate, the ALJ should call upon the services of a medical advisor.[33]

## B.    Application Of The Grids

The ALJ's error at the fourth step also affected the ALJ's findings at the fifth step of the sequential analysis. Based on his RFC finding, the ALJ determined that Plaintiff could not perform his past relevant work.  Thus, the burden of proof shifted to the Commissioner to establish that the claimant could perform other work that exists in the

---

[32](...continued)
claimant was disabled prior to the date last insured.

[33]   Because the Court has determined that the ALJ erred at step 4, and as a result the ALJ on remand will be required to conduct a new RFC analysis, the Court need not address Plaintiff's argument that the ALJ failed to properly consider his subjective complaints of pain.

national economy.[34]   The burden of showing by substantial evidence that a person who

can no longer perform his former job can engage in other substantial gainful activity is in

almost all cases satisfied only through the use of vocational expert testimony.[35]   It is only

when the claimant can clearly do unlimited types of work at a given residual functional

level that it is unnecessary to call a vocational expert to establish whether the claimant

can perform work which exists in the national economy.[36]

      Here, the ALJ relied solely on the grids and did not consult a vocational expert.

This was based on the ALJ's conclusion that Plaintiff had the exertional capacity to

perform substantially all of the requirements of light work.    However, vocational

testimony was necessary to determine which jobs Plaintiff could perform given his

mental impairments, his need to hold his left eye open in order to see, and the ALJ's

finding  that Plaintiff can only occasionally climb ladders, ropes and scaffolds and

balance.   The ALJ failed to make any findings or cite any vocational evidence supporting

his conclusion that these non-exertional limitations did not erode the light work

occupational base.[37]

---

[34] See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

[35] See id.

[36] See id.

[37] See 20 C.F.R. §404.1569a(c) providing that nonexertional limitations or restrictions include "You have difficulty maintaining attention or concentrating," "You have difficulty in seeing or hearing," and "You have difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching."

Accordingly, this matter is due to be remanded for the ALJ to reconsider, with vocational expert testimony if appropriate, whether Plaintiff can perform other work which exists in the national economy.

## V.  CONCLUSION

In view of the foregoing, the decision of the Commissioner is due to be **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner, for an Administrative Law Judge to: (1) properly consider whether Plaintiff's mental impairments became disabling prior to Plaintiff's date of last insurability, and if appropriate call upon the services of a medical advisor; (2) reconsider, with vocational expert testimony, whether Plaintiff can perform other work which exists in the national economy; and (3) conduct any additional proceedings the Commissioner deems appropriate. The Clerk is directed to enter final judgment in favor of the Plaintiff consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida this 8th day of August 2008.

GARY R. JONES
United States Magistrate Judge

Copies to:

Counsel of Record